Herold vs. Pfister.

HEROLD, by guardian *ad litem,* Respondent, vs. PFISTER, Appellant.

*February 5 — February 18, 1896.*

*Master and servant: Injury to minor: Assumption of risk: Court and jury.*

1. The risk of injury by falling while passing over steam pipes laid on a kitchen floor and covered with boards in the form of an inverted V two inches high and thirteen inches wide is *held,* as matter of law, to have been assumed by a girl sixteen years old, nearly full grown, and of reasonable intelligence, who had worked in such kitchen for five or six months and, though the condition of the floor was obvious, had never made any complaint in respect thereto.

2. In an action by a minor for personal injuries, where the evidence on the question of contributory negligence or assumption of risk is undisputed and the inferences from it are plain and certain, that question need not be submitted to the jury.  *Casey v. C., St. P., M. & O. R. Co.* 90 Wis. 113, followed; *Luebke v. Berlin Machine Works,* 88 Wis. 442, distinguished.

Herold vs. Pfister.

APPEAL from an order of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed.*

This was an action brought by the plaintiff, a minor of the age of about sixteen years, to recover damages against the defendant for an injury sustained while in his employ, by reason of his alleged negligence and breach of duty, in that the floor of the kitchen in which she was employed as second vegetable cook, in the Hotel Pfister, was unsafe and dangerous, as the steam pipes running along and over the floor were covered with pieces of boards in the form of an inverted V and extending about five inches above the floor, and that the defendant, by his superintendent, required her to do, alone, the work which required two persons to do in a safe and proper manner, and directed her to hurry and do her work quicker, so that she became excited and confused and her attention was thus diverted from the dangerous condition of the floor, whereby she fell over said steam pipes and covering, and received, in consequence, a severe cut on the right arm near the wrist, and other injuries, from which she became ill and was unable to work, etc., to her great damage. The defendant insisted, in his answer, that the floor was not unsafe, and that he had not been guilty of any negligence or breach of duty, and that the injuries of the plaintiff were caused solely by her negligence and lack of ordinary care.

Upon a trial before a jury, the plaintiff testified, as to the manner of her injury, in substance, that at the time she was employed in the kitchen as second vegetable cook; that it was her duty to cook the vegetables and dish them out on the steam table, about thirty feet from where they were prepared, for the waiters who attended in the dining room; that in coming from the vegetable pantry to the steam table she had to cross over two steam pipes, one near the table and the other before it, and they were on the floor and covered with boards in the form of an inverted V, the top of the

covering being about five inches above the floor; that she had no assistants, but had had one before, and in carrying a jar of mashed potatoes to the steam table she was hurrying and, as she was crossing over one of the steam pipes, she fell and cut herself with the jar; that she caught with her heel in stepping over it, and fell. As she expressed it, her heel " caught on the slant of the boards and I fell, and that was all there was of it." She further testified that there was plenty of help; that the room was well supplied with windows; that she was coming towards the light, which fell directly on the floor; and that the condition of the floor was in plain sight of everybody. She was in the sixteenth year of her age, and nearly full grown, and had worked there about five or six months. She had never measured the height of the covering of the steam pipes, but it was of hard wood, with a tight joint at the top, and the floor was of stone. A fellow servant described the situation in substantially the same manner, and stated that the boards were about as wide as the length of a volume of Reports; that the first vegetable cook was absent that day, and the plaintiff had to do the work alone.

The uncontradicted evidence showed that the pipes, etc., were in the same condition at the time of the trial as at the time when the injury occurred, and by actual measurement the height, at the highest point, from the floor to the covering of the steam pipes, was two inches, and it was thirteen inches wide. The jury was permitted to view the floor and the covering of the steam pipes in question. One Matthews, who had had experience in the construction of buildings and laying out of pipes therein, testified that he knew how the floor in question was constructed, and that it would be practicable to run the pipes under it, and such would be the proper method; that it would be better construction to place them under the floor, or up, over the floor, near the ceiling, than over the surface of the floor. It was admitted that the defendant had knowledge that another person had been in-

jured upon the covering of the pipes in question prior to the accident to the plaintiff.

At the close of the evidence the defendant's counsel moved the court to direct a verdict for the defendant, and such request was granted, and a verdict for the defendant was entered accordingly. Subsequently, the plaintiff moved to set aside the verdict and for a new trial, on the ground that the court erred in directing a verdict for the defendant, which motion was granted, and the court made an order accordingly, from which the defendant appealed.

For the appellant there was a brief by *Quarles, Spence & Quarles*, and oral argument by *T. W. Spence*.

For the respondent there was a brief by *Runkel & Georgi*, attorneys, and *Austin & Fehr*, of counsel, and oral argument by *W. H. Austin*.

PINNEY, J.   We think it is entirely plain that the court properly directed a verdict for the defendant.  The plaintiff appears to have been a person of reasonable intelligence and judgment for one of her years, and she had had experience in the kind of work in which she was employed, and had worked in it, upon and over the floor which it was alleged was of improper and unsafe construction, for five or six months.  Beyond question, she was entirely familiar with the situation and the alleged element of danger to her safety while thus engaged in her service.  She had arrived at years of discretion and was nearly or quite full grown.  It does not appear that she had ever made any complaint of the alleged defect, although it was plainly visible and well known to her.  The evidence shows that she was, beyond question, of sufficient intelligence and judgment to appreciate and understand whatever of danger there was to which she was exposed in passing over the covering of the pipes, as much so as an adult.  There was nothing obscure or complex in the situation, and nothing requiring special intelligence or experience, as in the case of *Chopin v. Badger*

*Paper Co.* 83 Wis. 192, in respect to the operation, speed, and consequent peril from machinery in motion. As the situation was entirely plain to the humblest understanding, and there was nothing in the case tending to show that she could not and did not fully understand and appreciate the risk or danger of passing and repassing over the covered pipes while about her work, she must be held to have assumed the risk of continuing in her employment, under the circumstances disclosed. It does not appear that anything occurred at the time to disturb or attract her attention. No one was then urging her to make haste in her work. The fact that she had been directed to hurry up her work, two hours before, was not likely to affect her powers of observation and judgment at the time the accident occurred.

The evidence was undisputed, and the inferences from it were plain and certain; and, although the plaintiff was a minor, the case presented no question for the consideration of the jury, but one of law for the court. In the case of *Luebke v. Berlin Machine Works,* 88 Wis. 442, the facts and proper inferences from them were in doubt, and what was there said was in discussing or declaring the rule by which the jury was to be guided, in view of the fact that the case was a proper one for their consideration, and that, therefore, the motion for a nonsuit, and the defendant's request that the jury should be directed to find for the defendant, were properly denied. The opinion in *Luebke v. Berlin Machine Works, supra,* taken in connection with the case before the court, does not hold that, in an action brought by a minor for personal injury, the question of his or her contributory negligence or assumption of risk, though it plainly appears from the uncontradicted evidence, must be submitted to the jury for its decision. The rule is clearly stated in *Casey v. C., St. P., M. & O. R. Co.* 90 Wis. 113.

*By the Court.*— The order appealed from is reversed, and the cause is remanded for a new trial.